**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | | |
|---|---|---|
| MAP Communications, Inc. and Telecom, LLC, | ) ) ) | Civil Action No. _____ |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | **VERIFIED COMPLAINT** |
| George Chandler, Lessa Walters, and Selena Stegall, | ) ) ) ) | (Jury Trial Demanded) |
| Defendants. | ) ) ) | |

Plaintiffs MAP Communications, Inc. ("MAP") and Telecom, LLC ("Telecom") (collectively, "Plaintiffs"), complaining of Defendants George Chandler ("Chandler"), Lessa Walters ("Walters"), and Selena Stegall ("Stegall") (collectively, "Defendants"), would respectfully show unto the Court as follows:

## I.     INTRODUCTION

1.     This action arises out of Defendants' scheme to unlawfully acquire Plaintiffs' business by forming and/or facilitating a directly competing business and using Plaintiffs' confidential information to target and raid its customers and employees.

2.     Up until February 1, 2018, Chandler owned and operated a telephone answering service business in Seneca, South Carolina. At that time, he sold his business to ProComm, LLC ("ProComm"), and in connection with its sale, Chandler agreed to be bound by confidentiality obligations and restrictive covenants that prevented him from competing with ProComm and its successors and from soliciting its customers and employees.

1

3.    On January 28, 2019, Plaintiffs purchased ProComm, and, as ProComm's successor and purchaser of its assets, Plaintiffs assumed those protections that Chandler would abide by his restrictive covenants and other obligations.

4.    In reality, it appears that Chandler never intended to remain out of the telephone answering service industry once he sold his business. Rather, he began plotting to reenter the same industry by forming and/or facilitating the operation of a direct competitor of Plaintiffs in Seneca—Atlas OnCall, LLC ("Atlas OnCall").

5.    As part of this unlawful scheme, Chandler induced two of Plaintiffs' key employees—Stegall and Walters—to resign and begin working for Atlas OnCall. While Stegall and Walters have non-disclosure and non-solicitation obligations of their own, they have used their direct knowledge of Plaintiffs' confidential information, such as pricing and customer lists, in order to solicit Plaintiffs' customers and undercut their prices.

6.    This is best evidenced by the following email on January 24, 2020 showing Walters, who was still employed by Plaintiffs, emailing customers through Plaintiffs' email account, and providing them with paperwork, contact information, and pricing (which is conveniently lower than Plaintiffs') for Atlas OnCall's new business:

From: ProComm OnCall [mailto:oncall@wegetthemessage.com]
Sent: Friday, January 24, 2020 8:01 AM
To: bgarrett@gastroasociates.com
Subject: Atlas Oncall

Hi Brice,

Here is part one of the paperwork for Atlas oncall. Please send any correspondence to me at: lessawalters@atlasoncall.com. Will send part 2 next.

Lessa Walters
Customer Care Specialist
Atlas Oncall
Lessawalters@atlasoncall. com
864-723-4886

7.     Defendants formed and/or facilitated Atlas OnCall to unfairly compete with Plaintiffs by targeting Plaintiffs' customers, employees, and proprietary business information in order to gain market share, customer relationships, goodwill and know-how.  Defendants have accomplished this goal by unlawfully converting Plaintiffs' customers to Atlas OnCall, including a significant amount of business from Plaintiffs' biggest customer, Medical Services of America, Inc. ("MSA").

8.     Defendants executed legally valid and binding agreements during their employment.   These agreements clearly set forth Defendants' obligations relating to confidentiality, non-competition, and non-solicitation of Plaintiffs' customers and other employees.  Despite these agreements, Chandler actively pursued Plaintiffs' employees, including Walters, Stegall, and Melissa Weeks ("Weeks"), to join Atlas OnCall and compete with Plaintiffs in the marketplace.  Plaintiffs also have reason to believe that Walters and Stegall were involved in the solicitation of Weeks.

9.     Defendants have solicited, and continue to solicit, even up to the filing of this Complaint, other employees of Plaintiffs to leave and join their competing business including, but not limited to, Jason Galloway ("Galloway") and Tonya Littleton ("Littleton").

10.     The above misconduct by Defendants is merely the first to be discovered. Defendants have and continue to engage in the targeting of Plaintiffs' established customer relationships in order to benefit themselves and to expand Atlas OnCall's market presence.

11.     Defendants' widespread and continuing solicitation of Plaintiffs' customers was confirmed as recently as February 24, 2020, when Stegall inadvertently sent an email entitled "Board update" to her old email account maintained by Plaintiffs with the following attachment:



This image contains concrete evidence that Defendants are soliciting Plaintiffs' customers to transfer their accounts to Atlas OnCall. The board contains the names of two of Plaintiffs' customers—Fallgatter and Albemarle—with dates for those customers to "Go Live!" with Atlas OnCall accounts. The board also contains locations for MSA—Myrtle Beach, Conway, Ridgeland, Charleston, Chesapeake, and Newport—with *Plaintiffs' location numbers* for those MSA locations listed beside each one. This uncontroverted evidence of Defendants' solicitation of Plaintiffs' customers verifies Defendants' unlawful plan to continue stealing Plaintiffs' customers by using Plaintiffs' confidential information to unfairly compete with Plaintiffs in the telephone answering service industry.

12.     As a direct result of Defendants' intentional wrongful conduct, Plaintiffs have suffered, and will continue to suffer, irreparable harm in the form of damage to Plaintiffs' reputation and goodwill, loss of business opportunities, damage to relationships with customers, and loss of market share. By this action, Plaintiffs seek damages for, and injunctive relief against, the actions of Defendants pursuant to the covenants contained in the written agreements between Plaintiffs and Defendants, as well as the statutory and common law of the State of South Carolina.

4

13.     Plaintiffs further seek expedited discovery in this matter in order to preserve and protect its confidential information from actual and threatened misappropriation by Defendants. *See* Fed. R. Civ. P. 26(d).

## II.    PARTIES AND JURISDICTION

14.     MAP is a Delaware corporation with its principal place of business located in Chesapeake, Virginia.

15.     Telecom, a subsidiary of MAP, is a Delaware limited liability company with its principal place of business located in Chesapeake, Virginia.  MAP is the sole member of Telecom. Together, Plaintiffs are in the telephone answering service industry.  Plaintiffs have offices in Seneca, South Carolina and in Albuquerque, New Mexico.  Plaintiffs offer these services nationally, and have customers in approximately 42 states.

16.     Upon information and belief, Defendants Chandler, Walters, and Stegall are individuals residing in Oconee County, South Carolina.

17.     The amount-in-controversy exceeds $75,000.00, exclusive of interests and costs.

18.     This Court has subject matter jurisdiction over this action based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants are subject to the personal jurisdiction of this Court, or in the alternative, because a substantial part of the events giving rise to this dispute occurred within this district.

20.     Venue is proper in this division because the events giving rise to this dispute occurred within this division.

## III.    FACTS

### A.    George Chandler

21.    On or about February 1, 2018, ProComm purchased Chandler's telephone answering service business, Professional Communications, LLC, pursuant to an Asset Purchase Agreement ("APA").  A true and correct copy of the APA is attached hereto as **Exhibit A**.

22.    In connection with the APA, Chandler also entered into a Services Agreement dated February 1, 2018 ("Services Agreement"), the purpose of which was to provide consulting services to ProComm for three months after his business was sold.   A true and correct copy of the Services Agreement is attached hereto as **Exhibit B**.

23.    On or about January 28, 2019, Plaintiffs acquired the assets of ProComm, including the assets used in its business of providing telephone answering services and messaging services in Seneca, South Carolina, as well as all claims, causes of action and rights of ProComm arising from or relating to its business.

24.    Pursuant to the APA, Chandler agreed that for a period of five years, he would not compete with, or assist another in competing with, the company's "Business" in the "Territory."[1] (APA § 6.1(a)-(b).)  Moreover, Chandler agreed, for that same period, that he would not request or advise any present or future customers to cancel any contracts with the company, request or advise any present or future employee to leave the company, or disclose or communicate to any

---

[1] "Business" is defined in the Introductory Paragraph of the APA as "owning and operating a telephone answering service and inbound call center services."  Moreover, "Territory" means "any State in which the Buyer has customers or prospective customers."  For purposes of this definition, a "prospective customer" is "any business as to which the Buyer has a record of making contact with such business for purposes of receiving a bid invitation, submitting a quote or setting an initial meeting to discuss potential business opportunities, or any business located in a territory that the Buyer has identified internally as an area in which it intends to expand its business."  (APA § 6.1.)

other person the names of past or present customers or past or present employees of the company. (APA § 6.1(c)-(e).)

25.    Chandler further promised that he would not, for a period of five years, hire any employee of the company on behalf of anyone who provides the same or similar services, induce any employee to leave the company, or induce any customer to cease doing business with the company.  (APA § 6.4(a)-(d).)

26.    The APA states that "either party [may] seek and obtain temporary injunctive relief from a court of competent jurisdiction in accordance with applicable law against threatened conduct that is likely to cause irreparable harm . . . or for violating or threatening to violate any of the restrictive covenants set forth in this Agreement."  (APA § 7.12.)  As ProComm's successor, and purchaser of assets, the APA's restrictive covenants inured to the benefit of Plaintiffs.  (APA § 7.8.)

27.    Chandler's Services Agreement, entered into in connection with the APA, contains a Non-Competition and Non-Disclosure provision pursuant to which Chandler agreed that for a period of five years following the termination of the Services Agreement, he would not, "directly or indirectly, engage in any business that is in actual or prospective competition with the Business of Company, whether as a principal, officer, director, proprietor, employee, partner, inventor, consultant, advisor, lender, sales representative, or agent, or any similar manner, anywhere within the Territory."  (Services Agreement § 7(1).)  The definitions of "Business" and "Territory" in the Services Agreement are nearly identical to those in the APA. (*Id.*; *see also* APA Introductory Paragraph and § 6.1.)

28.    Chandler also agreed that for a period of five years following the termination of the Services Agreement, he would not "at any time whatsoever, for himself or any other party, solicit,

interfere with, or seek to obtain for his own benefit or the benefit of any other party, any contract or prospective contract between Company and (a) any of its Customers, or (b) any of its vendors, suppliers, distributors, or other third parties." (Services Agreement § 7(2).)

29.    Furthermore, Chandler agreed that for five years following the termination of the Services Agreement, he would not "hire or solicit for hire any then current employee of Company." (*Id.*)

30.    The Services Agreement contains a confidentiality provision pursuant to which Chandler agreed that he would not, "directly or indirectly, use, make available, sell, disclose, or otherwise communicate to any person, other than in the course of the Consultant's assigned duties and for the benefit of the Company, . . . any nonpublic, proprietary, or confidential information, knowledge or data relating to the Company or its affiliates . . . which shall have been obtained or created by the Consultant during the Consultant's employment . . . , or pursuant to this Agreement with the Company." (Services Agreement § 7(3).) "Confidential Information" is defined to include, without limitation: "(a) business, financial, marketing and operational plans; (b) forecasts and projections; (c) sales plans and data; (d) information which relates to Company's proprietary products, prototypes, or plans; (e) customer lists and information; and (f) other information whether or not identified as confidential of a confidential and non-public nature." (*Id.*)

31.    As a consultant for Plaintiffs, Chandler was placed in a position of special trust and confidence, and was provided with extensive access to Confidential Information as defined in the Services Agreement.

32.    Chandler's duties as a consultant included, but were not limited to, communicating with customers and prospective customers about price options and service availability, assisting customers with individualized on-call needs, and managing and training a team of call center staff.

33. The Services Agreement terminated on April 1, 2018, and therefore the relevant covenants set forth in the Services Agreement are set to expire on April 1, 2023. As successor to ProComm and purchaser of its assets, Plaintiffs assumed ProComm's rights and obligations under the Services Agreement, including ProComm's rights to enforce the aforementioned restrictive covenants and confidentiality obligations.

34. Upon information and belief, Chandler formed and/or facilitated a telephone answering services business under the name of "Atlas OnCall" in January 2020—before the expiration of the relevant covenants in his Services Agreement and the APA.

35. Atlas OnCall is a direct competitor of Plaintiffs. Atlas OnCall is operating in the same building that was previously leased by Plaintiffs, located at 15883 Wells Highway, Seneca, South Carolina 29678.

36. In violation of the non-solicitation provisions in the APA and Services Agreement, Chandler has solicited Plaintiffs' customers and prospective customers, and hired or solicited for hire current employees of Plaintiffs.

37. Chandler has used Plaintiffs' Confidential Information to form and/or facilitate a competing company and unfairly compete with Plaintiffs in the marketplace.

38. Chandler's actions and continuing actions as described above are in direct violation of the terms of the APA and his Services Agreement.

**B.    Lessa Walters**

39. Walters was employed as Plaintiffs' Customer Care Services Representative, and her job duties included, but were not limited to, directly communicating with customers about service needs and expectations, as well as assisting customers with pricing and cost savings.

40.    Through her employment with Plaintiffs, she received comprehensive training and support, held positions of trust and confidence, and gained direct access to Plaintiffs' business, financial, marketing and operational plans; forecasts and projections; sales plans and data; information regarding key customers and prospective customers, including the identity and contact information of decision-makers and specific service needs of each customer. Indeed, in her role, she was the employee most responsible for communicating and developing relationships with customers in order to address any questions or concerns that they may have.

41.    Upon information and belief, Plaintiffs' customers would contact Walters not only on her company email and phone, but also on her personal cellular device in order to discuss their accounts and needs.

42.    Walters entered into an Employment Agreement dated February 1, 2018 ("Employment Agreement").  A true and correct copy of Employment Agreement is attached hereto as **Exhibit C**.

43.    Walters agreed that during her employment and for a period of five years after, she would not "solicit, interfere with, or seek to obtain for Employee's own benefit or the benefit of any other party, any contract or prospective contract between Company and (a) any of its Customers, or (b) any of its vendors, suppliers, distributors, or other third party."  (Employment Agreement § 5.1.)

44.    Walters further agreed that she would not hire or solicit for hire any employee of the company, or any former employee whose employment terminated during the prior preceding year.  (Employment Agreement § 5.1.)

45.    Walters' Employment Agreement also contained a confidentiality provision, pursuant to which Walters agreed to "hold the Company's Confidential Information in the strictest

confidence" and "not disclose the Confidential Information to any third party at any time, including after termination of this Agreement." (Services Agreement § 5.3.)

46.     Plaintiffs assumed ProComm's rights and obligations under the Employment Agreement, including ProComm's rights to enforce the above-stated provisions. (Services Agreement § 6.)

47.     Walters resigned on January 17, 2020 and was scheduled to complete her notice period on January 30, 2020. A true and correct copy of Walters' resignation is attached hereto as **Exhibit D**.

48.     Walters subsequently sent an email on Monday, January 27, 2020 notifying Plaintiffs that her last day was the prior Friday, January 24, 2020. A true and correct copy of Walters' January 27, 2020 email is attached hereto as **Exhibit E**.

49.     Walters resigned to begin working at Atlas OnCall with Chandler (who, in turn, solicited and recruited Walters in violation of his own contractual obligations to Plaintiffs).

50.     Upon information and belief, Walters' efforts on behalf of Atlas OnCall and Chandler actually began prior to her resignation, and included a scheme to make intentional mistakes during the conversion of operating platforms in order to create dissatisfaction amongst Plaintiffs' customers and lay the groundwork for soliciting Plaintiffs' customers and prospective customers for the benefit of a new competing business—Atlas OnCall.    For example, Walters failed to notify customers that the conversion was taking place, as she was specifically instructed to do; failed to implement solutions to issues that developed with customers' on-call prompts when the conversion was in progress; and failed to provide the information requested by Plaintiffs' regional manager leading the conversion process, which resulted in unreasonable delay.

51.     Upon information and belief, Walters is using Plaintiffs' customer contact information stored on her personal cellular device to contact and solicit Plaintiffs' customers and prospective customers for the benefit of Atlas OnCall.  Moreover, upon information and belief, Chandler directed Walters to remove and retain Plaintiffs' Confidential Information prior to her abrupt resignation from employment, and have used—and continue to use—that information for Atlas OnCall's benefit.

52.     On the last day of Walters' employment with Plaintiffs, she sent an email to one of Plaintiffs' customers—Brice Garrett at Gastro Associates—with the subject "Atlas Oncall."  The email states: "Here is part one of the paperwork for Atlas oncall.  Please send any correspondence to me at: lessawalters@atlasoncall.com."  The signature block on the email says that Walters is a Customer Care Specialist at Atlas Oncall.  The email contains an attachment entitled "Welcome to Atlas OnCall," and provides "@atlasoncall.com" email addresses for both Walters and Stegall.  A true and correct copy of this January 24, 2020 email is attached hereto as **Exhibit F**.

53.     On that same day, Walters sent a second email to Brice Garrett at Gastro Associates with the subject "Part 2."  The email contained an attachment for Atlas OnCall Account Setup Information and package options.  A true and correct copy of the second January 24, 2020 email is attached hereto as **Exhibit G**.

54.     Upon information and belief, Defendants created the price levels contained in Atlas OnCall's package options based upon their knowledge of Plaintiffs' price levels.  Defendants wrongfully used their knowledge of Plaintiffs' Confidential Information in order to undercut Plaintiffs' pricing and gain an unfair advantage in the marketplace.  (*See* Ex. G.)

55.     Upon information and belief, Walters is currently employed by Atlas OnCall as a Customer Care Specialist, and her job duties are similar, if not identical, to the duties she performed for Plaintiffs.

56.     In direct violation of her Employment Agreement, Walters has solicited for hire current employees of Plaintiffs, including, but not limited to, Weeks, Littleton, and Galloway.

57.     Walters' actions and continuing actions as described above are in direct violation of the terms of her Employment Agreement.

**C.    Selena Stegall**

58.     Stegall was the General Manager of Plaintiffs' Seneca, South Carolina branch.

59.     As General Manager, Stegall's job duties included, but were not limited to, hiring and training call center representatives, dealing with customer issues and complaints, leading team meetings, assisting other management team members in identifying trends and establishing goals, and preparing financial reports and analyzing data to improve processes.

60.     Stegall entered into a Non-Solicitation Agreement on December 13, 2019 ("Non-Solicitation Agreement").  A true and correct copy of Non-Solicitation Agreement is attached hereto as **Exhibit H**.

61.     Stegall agreed that during her employment and for a period of two years thereafter, she would not directly or indirectly "call upon, solicit, divert or take away any of the subscribers of employer whom . . . she has personal contact with customers or customer prospects in an effort to initiate or further a business relationship between the Employer and such customers or customer prospects."  (Non-Solicitation Agreement § 3.)

62.     Stegall further agreed that she would not "solicit, hire, recruit, attempt to hire or recruit, or induce the termination of employment of any employee of the Employer."  (Non-Solicitation Agreement § 4.)

63.     Stegall's Non-Solicitation Agreement also contains a Confidentiality provision, pursuant to which Stegall agreed not to "make known or divulge to any person, firm, corporation, business entity or association, Employer's business methods and procedures and/or the names, addresses, and telephone numbers of Employer's subscribers or any other information, personal, financial, or otherwise, pertaining to any subscriber to Employer's telephone answering service who was a subscriber at the time Employee became employed or who became a subscriber thereafter or with whom Employee became acquainted during such employment or thereafter." (Non-Solicitation Agreement § 2.b.)  Stegall agreed that "any lists of Employees and/or names, addresses, and telephone numbers of Employer's customers or any part thereof, are trade secrets of Employer."  (*Id*.)

64.     Stegall submitted her notice of resignation on January 18, 2020, and worked a two-week notice period.  Her last day was on January 31, 2020.  A true and correct copy of Stegall's resignation is attached hereto as **Exhibit I**.

65.     Upon information and belief, Stegall resigned to begin working at Atlas OnCall with Chandler (who, in turn, solicited and recruited Stegall in violation of his own contractual obligations to Plaintiffs).  Moreover, upon information and belief, Chandler directed Walters to remove and retain Plaintiffs' Confidential Information prior to her abrupt resignation from employment, and have used—and continue to use— that information for Atlas OnCall's benefit.

66.     Upon information and belief, Stegall's efforts on behalf of Atlas OnCall and Chandler actually began prior to her resignation, and included a scheme to make intentional

mistakes during the conversion of operating platforms in order to create dissatisfaction amongst Plaintiffs' customers and lay the groundwork for soliciting Plaintiffs' customers and prospective customers for the benefit of a new competing business—Atlas OnCall.    Like Walters, Stegall failed to notify customers that the conversion was taking place, as she was specifically instructed to do; failed to implement solutions to issues that developed with customers' on-call prompts when the conversion was in progress; and failed to provide the information requested by Plaintiffs' regional manager leading the conversion process, which resulted in unreasonable delay.

67.    On January 24, 2020, while Stegall was still employed by Plaintiffs, Walters sent information to Plaintiffs' customers regarding how to set up a new account with Atlas OnCall. This information contained an Atlas OnCall email address for Stegall— selena.stegall@atlasoncall.com.   (*See* Ex. F.)

68.    Upon information and belief, Stegall is currently employed by Atlas OnCall, and her job duties are similar, if not identical, to the duties she performed for Plaintiffs.

69.    On February 24, 2020, Stegall inadvertently sent an email entitled "Board update" to her old email account maintained by Plaintiffs.  An image attached to that email shows that Defendants are soliciting Plaintiffs' customers to transfer their accounts to Atlas OnCall.  The board contains the names of two of Plaintiffs' customers—Fallgatter and Albemarle—with dates for those customers to "Go Live!" with Atlas OnCall accounts.  The board also contains locations for MSA—Myrtle Beach, Conway, Ridgeland, Charleston, Chesapeake, and Newport—with *Plaintiffs' location numbers* for those MSA locations listed beside each one.  A true and correct copy of the February 24, 2020 email is attached here to as **Exhibit J**.

70.    Stegall's actions and continuing actions in this regard are in direct violation of the terms of her Non-Solicitation Agreement.

## FOR A FIRST CAUSE OF ACTION
### (Breach of Contract – George Chandler)

71.    Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

72.    Chandler entered into valid contractual obligations with Plaintiffs in the form of the APA and Services Agreement he signed for valuable consideration.

73.    Plaintiffs have fully performed all of their obligations to Chandler.

74.    In spite of Plaintiffs good faith performance, Chandler breached his contractual obligations as set forth in the APA and Services Agreement by, among other things, directly competing against Plaintiffs in the telephone answering services industry, soliciting Plaintiffs' customers for financial gain, soliciting Plaintiffs' employees and inducing several employees to breach their own contractual obligations to Plaintiffs, and using Plaintiffs' Confidential Information for the benefit of himself and Atlas OnCall.

75.    Upon information and belief, Chandler has solicited Plaintiffs' customers and prospective customers on behalf of Atlas OnCall in violation of the APA and his Services Agreement.

76.    Upon information and belief, Chandler has misappropriated and used Plaintiffs' Confidential Information to benefit himself and Atlas OnCall in direct violation of the APA and his Services Agreement.

77.    Chandler is in direct violation of Section 6.1 of the APA and Section 7(1) of the Services Agreement by virtue of his engagement in a business that is in competition with Plaintiffs' business.

78.     In addition, Chandler is in direct violation of Section 6.1 of the APA and Section 7(2) of the Services Agreement by virtue of his solicitation of Plaintiffs' customers and prospective customers for the benefit of himself and Atlas OnCall.

79.     Chandler's actions further constitute a breach of Section 6.1 of the APA and Section 7(2) of the Services Agreement due to his hiring and solicitation for hire of current employees of Plaintiffs.

80.     In breach of Section 7(3) of the Services Agreement, Chandler has, upon information and belief, disclosed and used Plaintiffs' Confidential Information for purposes of forming and/or facilitating a business in direct competition with Plaintiffs and soliciting Plaintiffs' customers and employees.

81.     As a result of Chandler's breaches, Plaintiffs have suffered actual damages.

82.     Plaintiffs, as purchasers of ProComm and its assets, are entitled to a judgment against Chandler for the amount of their actual, general, compensatory, incidental, special, and consequential damages relating to his contractual breaches, including without limitation, attorneys' fees as specified in Section 7(5) of the Services Agreement.

83.     Pursuant to the APA and Services Agreement, Plaintiffs are also entitled to injunctive relief to restrain Chandler from further breach and unlawful competition.

84.     Unless Chandler is enjoined from the foregoing conduct, Plaintiffs, will continue to be immediately and irreparably harmed by:

    a.  Loss of actual and potential customers through the misappropriation of Plaintiffs' Confidential Information, as well as acts in breach of the contractual obligations that Defendants owe to Plaintiffs;

    b.  Disclosure and loss of Plaintiffs' Confidential Information;

    c.  Loss of confidence and trust of customers, loss of goodwill, and loss of business reputation; and

    d.  Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

85. Plaintiffs have no adequate remedy at law.

86. In addition to the relief set forth above, Plaintiffs request that this Court issue a temporary restraining order enjoining Chandler, directly or indirectly, alone or in concert with others, from:

    a.  Competing with Plaintiffs, or assisting anyone in competing with Plaintiffs, in the telephone answering service business in the area defined in the APA and Services Agreement;

    b.  Causing or inducing any of Plaintiffs' customers to cease doing business with Plaintiffs or otherwise interfering with Plaintiffs' business relationships;

    c.  Hiring or soliciting for hire employees of Plaintiffs; or

    d.  Disclosing or otherwise communicating to any person Plaintiffs' Confidential Information.

### FOR A SECOND CAUSE OF ACTION
#### (Breach of Contract – Lessa Walters)

87. Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

88. Walters entered into valid contractual obligations with Plaintiffs in the form of the Employment Agreement she signed for valuable consideration.

89. Plaintiffs have fully performed all of their obligations to Walters.

90.    In spite of Plaintiffs' good faith performance, Walters breached her contractual obligations as set forth in the Employment Agreement by, among other things, soliciting Plaintiffs' customers for financial gain, soliciting Plaintiffs' employees, and using Plaintiffs' Confidential Information for the benefit of herself and Atlas OnCall.

91.    Walters has solicited Plaintiffs' customers and prospective customers on behalf of Atlas OnCall in violation of her Employment Agreement.

92.    Upon information and belief, Walters has misappropriated and used Plaintiffs' Confidential Information to benefit herself and Atlas OnCall in direct violation of the Employment Agreement.

93.    Walters is in direct violation of Section 5.1 of the Employment Agreement by virtue of her solicitation of Plaintiffs' current and potential customers.

94.    In addition, Walters is in direct violation of Section 5.1 of the Employment Agreement by virtue of her solicitation for hire of current employees of Plaintiffs.

95.    In breach of Section 5.3 of the Employment Agreement, Walters has, upon information and belief, disclosed and used Plaintiffs' Confidential Information for purposes of forming and/or facilitating a business in direct competition with Plaintiffs and soliciting Plaintiffs' customers and employees.

96.    As a result of Walters' breaches, Plaintiffs have suffered actual damages.

97.    Plaintiffs, as purchasers of ProComm and its assets, are entitled to judgment against Walters for the amount of their actual, general, compensatory, incidental, special, and consequential damages relating to her contractual breaches, including without limitation, attorneys' fees as specified in Section 5.4 of the Employment Agreement.

98.    Pursuant to the Employment Agreement, Plaintiffs are also entitled to injunctive relief to restrain Walters from further breach and unlawful competition.

99.    Unless Walters is enjoined from the foregoing conduct, Plaintiffs will be immediately and irreparably harmed by:

    a.   Loss of actual and potential customers through the misappropriation of Plaintiffs' Confidential Information, as well as acts in breach of the contractual obligations that Defendants owe to Plaintiffs;

    b.   Disclosure and loss of Plaintiffs' Confidential Information;

    c.   Loss of confidence and trust of customers, loss of goodwill, and loss of business reputation; and

    d.   Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

100.    Plaintiffs have no adequate remedy at law.

101.    In addition to the relief set forth above, Plaintiffs request that this Court issue a temporary restraining order enjoining Walters, directly or indirectly, alone or in concert with others, from:

    a.   Causing or inducing any of Plaintiffs' customers to cease doing business with Plaintiffs or otherwise interfering with Plaintiffs' business relationships;

    b.   Hiring or soliciting for hire employees of Plaintiffs; or

    c.   Disclosing or otherwise communicating to any person Plaintiffs' Confidential Information.

## FOR A THIRD CAUSE OF ACTION
### (Breach of Contract – Selena Stegall)

102.    Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

103.    Stegall entered into valid contractual obligations with Plaintiffs in the form of the Non-Solicitation Agreement she signed for valuable consideration.

104.    Plaintiffs have fully performed all of their obligations to Stegall.

105.    In spite of Plaintiffs good faith performance, Stegall breached her contractual obligations as set forth in the Non-Solicitation Agreement by, among other things, soliciting Plaintiffs' customers for financial gain, soliciting Plaintiffs' employees, and using Plaintiffs' Confidential Information for the benefit of herself and Atlas OnCall.

106.    Upon information and belief, Stegall has solicited Plaintiffs' customers and prospective customers on behalf of Atlas OnCall in violation of her Non-Solicitation Agreement.

107.    Upon information and belief, Stegall has misappropriated and used Plaintiffs' Confidential Information to benefit herself and Atlas OnCall in direct violation of the Non-Solicitation Agreement.

108.    Stegall is in direct violation of Section 3 of the Non-Solicitation Agreement by virtue of her engagement in a business that is in competition with Plaintiffs' business, and her solicitation of Plaintiffs' current and potential customers.

109.    In addition, Stegall is in direct violation of Section 4 of the Non-Solicitation Agreement by virtue of her solicitation for hire of current employees of Plaintiffs.

110.    In breach of Section 2 of the Non-Solicitation Agreement, Stegall has, upon information and belief, disclosed and used Plaintiffs' Confidential Information for purposes of

forming and/or facilitating a business in direct competition with Plaintiffs and soliciting Plaintiffs' customers and employees.

111.    As a result of Stegall's breaches, Plaintiffs have suffered actual damages.

112.    Plaintiffs are entitled to a judgment against Stegall for the amount of their actual, general, compensatory, incidental, special, and consequential damages relating to her contractual breaches, including without limitation, attorneys' fees as specified in Section 9 of the Non-Solicitation Agreement.

113.    Pursuant to the Non-Solicitation Agreement, Plaintiffs are also entitled to injunctive relief to restrain Stegall from further breach and unlawful competition.

114.    Unless Stegall is enjoined from the foregoing conduct, Plaintiffs will be immediately and irreparably harmed by:

a.    Loss of actual and potential customers through the misappropriation of Plaintiffs' Confidential Information, as well as acts in breach of the contractual obligations that Defendants owe to Plaintiffs;

b.    Disclosure and loss of Plaintiffs' Confidential Information;

c.    Loss of confidence and trust of customers, loss of goodwill, and loss of business reputation; and

d.    Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

115.    Plaintiffs have no adequate remedy at law.

116.    In addition to the relief set forth above, Plaintiffs request that this Court issue a temporary restraining order enjoining Stegall, directly or indirectly, alone or in concert with others, from:

a.  Causing or inducing any of Plaintiffs' customers with whom she had contact to cease doing business with Plaintiffs or otherwise interfering with Plaintiffs' business relationships;

b.  Hiring or soliciting for hire employees of Plaintiffs; or

c.  Disclosing or otherwise communicating to any person Plaintiffs' Confidential Information.

**FOR A FOURTH CAUSE OF ACTION**
**(Tortious Interference with Contract – George Chandler)**

117.    Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

118.    Chandler was at all relevant times personally aware of Walters and Stegall's contractual obligations to Plaintiffs including, without limitation, their obligations to protect Plaintiffs' Confidential Information, not directly compete with Plaintiffs, and not solicit Plaintiffs' customers.

119.    Chandler was also personally made aware of Walters and Stegall's contractual obligations to Plaintiffs via correspondence placing him on express notice of same.

120.    In spite of the above, Chandler intentionally interfered with Plaintiffs' contractual relations with Walters and Stegall, inducing them to breach those obligations for an improper purpose and by improper methods.

121.    Upon information and belief, Chandler intentionally solicited Walters and Stegall to abandon their employment with Plaintiffs and immediately commence work for Atlas OnCall, in breach of their covenants to Plaintiffs.

122.    Upon information and belief, Chandler has caused, aided, and condoned Walters and Stegall's solicitation of customers of Plaintiffs.

123.    Plaintiffs have been damaged as a result of Chandler's tortious interference with their contractual relations with Walters and Stegall, including, without limitation, loss of actual and potential customers, actual and threatened disclosure of Plaintiffs' Confidential Information, loss of goodwill, loss of business reputation, as well as present and future economic loss.

124.    Plaintiffs are entitled to judgment against Chandler for the amount of their actual, general, compensatory, incidental, special, and consequential damages occasioned by his tortious interference, as well as punitive damages.

**FOR A FIFTH CAUSE OF ACTION**
**(Conversion – As to All Defendants)**

125.    Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

126.    Plaintiffs have an ownership interest in and are entitled to possession of all documents and materials, in whatever form, related to their business, and have an ownership interest in their Confidential Information as described hereinabove.

127.    Defendants copied, otherwise wrongfully obtained, and misused Plaintiffs' electronic files, data, and documents without the authorization of Plaintiffs, including, without limitation, documents reflecting Plaintiffs' Confidential Information, and Defendants have been unjustly enriched by virtue of their use of same.

128.    The above acts of Defendants constitute a conversion of Plaintiffs' electronic files, data, documents, and tangible materials.

129.    Plaintiffs have suffered actual damages as a direct and proximate result of this conversion.

130.    Plaintiffs are entitled to judgment against these Defendants for the amount of their actual, general, compensatory, incidental, special, and consequential damages relating to such conversion.

131.    Defendants' actions were reckless, willful, and wanton and Plaintiffs are further entitled to judgment against Defendants for punitive damages.

**FOR A SIXTH CAUSE OF ACTION**
**(Unjust Enrichment – As to All Defendants)**

132.    Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

133.    Defendants have wrongfully taken Plaintiffs' business opportunities and Confidential Information.

134.    Permitting Defendants to retain the benefit of the use of these opportunities and valuable information without Plaintiffs' authorization would be inequitable.

135.    Defendants have been unjustly enriched and should pay restitution such that Plaintiffs are returned to the status quo.

136.    Plaintiffs are therefore entitled to recover restitution from Defendants in order to return Plaintiffs to their status quo.

**FOR A SEVENTH CAUSE OF ACTION**
**(Accounting – As to All Defendants)**

137.    Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

138.    Plaintiffs are entitled to recover any profits of Defendants that are attributable to their intentional wrongful acts.

139.    The amount of money due from these Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of the profits made by Defendants attributable to their wrongful acts.

140.    Accordingly, Plaintiffs are entitled to an accounting of all funds and information received and retained by Defendants.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and request that the Court award the following relief:

A.    A temporary restraining order enjoining all Defendants, directly or indirectly, alone or in concert with others, from:

(i)    Breaching or continuing to breach the covenants contained in their Agreements with Plaintiffs;

(ii)    Causing or inducing any of Plaintiffs' customers to cease doing business with Plaintiffs or otherwise interfering with Plaintiffs' business relationships, and requiring that Defendants identify, no later than two (2) business days from the date of the Court's Order, each and every customer of Plaintiffs whom Defendants have solicited for their own benefit;

(iii)    Hiring or soliciting for hire employees of Plaintiffs;

(iv)    Disclosing or otherwise communicating to any person Plaintiffs' Confidential Information as specifically described herein;

(v)    Destroying, altering, transmitting, or moving any documents, in whatever form, that may contain or reflect Plaintiffs' Confidential Information so that said

documents may be gathered and reviewed by counsel for Plaintiffs and this Court; and

(vi)     Any and all other such acts as the Court deems appropriate for injunctive relief.

B.     An Order granting expedited discovery in order to ascertain the full nature and extent of Defendants' activities referenced herein, including, without limitation, the nature and extent of Plaintiffs' Confidential Information that may have been disclosed and the nature and extent of Plaintiffs' customers that Defendants have solicited using said information;

C.     An Order providing that Plaintiffs are allowed to immediately serve discovery requests upon Defendants, and to be entitled to responses to any written discovery within fifteen (15) business days of the service of said discovery;

D.     An award of actual damages against all Defendants incurred as a result of Defendants' wrongful conduct, as well as an award of damages for the unjust enrichment caused by Defendants' wrongful acts;

E.     An award of punitive damages and attorneys' fees against all Defendants;

F.     Judgment against Defendants for the amount of Plaintiffs' actual, general, compensatory, incidental, special, and consequential damages relating to their contractual breaches, including, without limitation, liquidated damages;

G.     Judgment against Defendant Chandler for the amount of Plaintiffs' actual, general, compensatory, incidental, special, consequential, and punitive damages relating to his interference with Plaintiffs' contracts;

H.     An award to Plaintiffs against all Defendants for Plaintiffs' reasonable costs and attorneys' fees incurred in bringing this action;

I.      An accounting of all funds and information received and retained by Defendants; and

J.      Such other and further relief as the Court deems just and proper.

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Samuel W. Outten
    Samuel W. Outten
    Federal Bar No. 02943
    E-Mail: sam.outten@nelsonmullins.com
    Katie E. Towery
    Federal Bar No. 12861
    E-Mail: katie.towery@nelsonmullins.com
    2 W. Washington Street / Suite 400
    Post Office Box 10084 (29603-0084)
    Greenville, SC 29601
    Telephone: (864) 373-2300

**MCDERMOTT WILL & EMERY LLP**

    J. Christian Nemeth
    E-Mail: jnemeth@mwe.com
    444 West Lake Street / Suite 4000
    Chicago, IL 60606-0029
    Aaron Sayers
    E-Mail: asayers@mwe.com
    1007 North Orange Street / 4th Floor
    Wilmington, DE 19801
    Telephone: (312) 984-3292

    *Attorneys for Plaintiffs*